Order appealed from reversed, with costs, and the appellant discharged.

---

FRANK T. LA CROY, RESPONDENT, *v.* THE NEW YORK, LAKE ERIE AND WESTERN RAILROAD COMPANY, APPELLANT.

*Master and servant — neglect by the master to furnish proper appliances — rules of a railroad company, how they must be brought to the attention of an employee.*

In an action brought by a brakeman to recover damages arising from injuries received by him while employed upon the defendant's road, alleged to have arisen through its neglect to furnish safe and sufficient cars and brakes for the use of the train, a defense was interposed that the plaintiff had disobeyed the standing rules of the company, which required him to inspect the brakes, the neglect to comply with which rules was alleged to have caused the disaster.

Upon the trial of the action the court charged the jury that the rules of the company were reasonable; and also charged, in substance, that if the plaintiff had notice or knowledge of them it was his duty in all respects to obey them; that, unless the rules were brought to the plaintiff's attention, so that he knew or was informed of their existence, or unless they were put into his possession to be read by him, and if he was not informed of the book containing instructions as to his duties, and was ignorant of them, that he would not be bound by them. *Held,* that the charge was proper.

That it was the company's duty to give full and explicit instructions, as well in the case of its employees as in that of third persons, where life or property were involved.

APPEAL by the defendant from a judgment, entered in the office of the clerk of the county of Chautauqua on the 25th day of May, 1889, with notice of an intention to bring up for review upon such appeal an order, dated May 17, 1889, denying defendant's motion for a new trial on the minutes.

The action was tried at the Chautauqua Circuit before the court and a jury, at which a verdict was rendered in favor of the plaintiff against the defendant for $3,500. The action was brought to recover damages for personal injuries sustained by the plaintiff while in defendant's employ, because of the alleged neglect of the defendant to furnish safe and sufficient cars and brakes to be used by the plaintiff in such employment.

*James H. Stevens,* for the appellant.

*John G. Record,* for the respondent.

CORLETT, J. :

In April, 1887, forty cars loaded with coal were run by defendant on its track from Brockwayville, in the State of Pennsylvania, northerly in the direction of Bradford. Johnsonburg was a terminal station on the route where the train stopped two hours, taking a side track. The plaintiff was one of the four brakemen who started with the train upon which there was a conductor, engineer and fireman. The distance between Brockwayville and Bradford was upwards of sixty miles, and the time would be from seven to forty-eight hours. The defendant's road is down grade going east, or rather north, after leaving Crawford Junction, on an average of from 100 to 102 feet to the mile for a distance of five or six miles, the steepest part being about half a mile outside of Crawford Junc-

tion, but the grade is not uniform, in some places greater than others. While going down this grade the train went to pieces and the cars were piled one upon another. A wheel was broken and the plaintiff was severely injured in the disaster. At the time of the accident the train was running at the rate of about sixty miles an hour. In January, 1888, the plaintiff brought this action, which was tried in May, 1889, at Mayville, and resulted in a verdict for the plaintiff of $3,500. A motion for a new trial was made on the minutes and denied ; judgment was entered and the defendant appealed to this court.

The position of the plaintiff on the trial was, that the defendant neglected to furnish safe and sufficient cars and brakes for the use of the train. The defense was based on the assumption that the plaintiff disobeyed the standing rules of the company, which caused the disaster. Those rules, so far as material, are as follows :

" Brakemen of freight trains will receive instructions from the division superintendents ; they will be under the immediate control and must obey the orders of the freight train conductors ; at terminal stations they must obey the order of the yard-master. They will have the duty of coupling the freight cars, applying the brakes, using the signals, working the switches when their trains are using switches, where there are no switchmen, assisting in loading and unloading freight, and the care of freight cars and caboose of their train while their train is on the road, and will be held responsible for the strict performance of their duties in accordance with the rules of the company, and for prompt obedience to all orders of the conductors. They must report for duty at the terminal stations at the time appointed and assist in the shifting and making up of trains ; before starting they must test the hand-brakes and see that they are in proper condition and work easily, and see that the train signals are in good order and ready for immediate use. They must not leave their brakes while the train is in motion nor take any other position in the train than that assigned them by the conductor."

By these instructions it was the duty of the plaintiff before the train left Brockwayville to inspect the brakes if he had knowledge or notice of these rules, and also at Johnsonburg. The evidence shows that the plaintiff made no inspection. There was an implied contract between the plaintiff and defendant when he entered their

employ as a brakeman that the cars upon which he was to labor should be reasonably safe, also the brakes, and that they should be in working order. The breaches of duty by the defendant, alleged on the part of the plaintiff, were that there were not a sufficient number of brakes and that they were not in proper order. The evidence tended to show that these forty cars loaded with coal required from thirty to thirty-five brakes to make them safe going down grade, and also tended to show that there were not this number of brakes; also, that many of them were defective, and that, in view of the grade, the defendant was negligent in omitting to furnish a sufficient number of brakes; also that it omitted to keep them in proper condition. ·

The general rules of the defendant provide, among other things, that officers, agents and employees must become familiar with the regulations of the company and observe the rules and strictly enforce them upon those under their control, and that ignorance of the rules will not exempt or excuse them for neglect of duty. Unless the plaintiff was negligent in omitting to comply with the rules it is not claimed that he neglected any duty at or before the accident which in any way contributed to its production. The plaintiff testified on the trial that he never read those instructions; that he never received any information of the existence or import of the directions above quoted, and that he was ignorant of their existence. The trial justice charged the jury, in substance, that those instructions were reasonable, and that if the plaintiff had knowledge or notice of them it was his duty in all respects to obey. The justice further charged that, unless they were brought to the plaintiff's attention so that he knew or was informed of their existence, or unless put in his possession to be read by him, and if he was not informed of this book containing instructions as to his duties, and was ignorant of them, or unless it was put where it was accessible to him, that they would not bind him and he would not be guilty of negligence for want of knowledge of what they were. That if the plaintiff knew his duty it was manifest he had neglected it by omitting to examine or inspect the brakes.

The result of this appeal depends upon the correctness of the charge of the trial justice upon this question. All the rules and regulations of the company must be construed in reference to known

facts and obvious surroundings. A brakeman, while an employee, occupies a comparatively subordinate position. It is reasonable to assume that he would not be active or vigilant in acquiring a knowledge of printed or written rules unless his attention was called to them. It is fair to assume that when a brakeman is employed, the duty devolves upon the company of calling his attention to its written or printed rules needful to him, and either furnish him with copies or inform him where he will find them. Ordinary observation teaches that unless a laborer's attention is called and directed to such matters their necessity or importance will not occur to him, even though he knows, in a general way, of their existence. He would naturally assume that they were for the information and instruction of those in position and authority, and that no personal obligation rested upon him to examine and master their contents.

It is matter of universal observation that those employed to perform manual labor, upon whom no duty of supervision or direction is imposed, are not vigilant in acquiring knowledge of their own obligations beyond instructions or information distinctly given or conveyed. As to third persons, where life or property is involved, it would not be a reasonable excuse for the company to say instructions were printed, and the employees, if vigilant, might have familiarized themselves with their nature and import. The answer would be, where liability turned on that question, that the company's duties required the giving of full and explicit instructions. The question here presented is whether a different rule obtains between the company and the brakeman.

In the light of the above suggestions it ought not to be absolved from liability, unless it imparts full and clear information to its employees. It ought not to be allowed to escape on conjecture or possibilities. While the brakeman assumes, by virtue of his employment, the risks incident to his vocation, still, naturally, the acquisition of a knowledge of written or printed rules was not included among those risks, which should be limited to the ordinary and visible hazards incident to the discharge of his duties. Testing the charge by these rules, it is not believed that the learned justice fell into an error which requires a reversal.

In *Ford* v. *Lake Shore and Michigan Southern Railroad Company* (27 N. Y. St. Rep., 248) and *Byrnes* v. *New York, Lake*

*Erie and Western Railroad Company* (113 N. Y., 250), a construction of questions of fact by the court disposed of each case. The same is true of *Disher* v. *New York Central Railroad Company* (2 N. Y. St. Rep., 277; affirmed, 22 id., 1000), where the facts were more analogous to those in the case at bar. It does not appear that the damages were so excessive as to require a modification on that ground.

The judgment and order should be affirmed.

DWIGHT, P. J., concurred in result.

Judgment and order appealed from affirmed.